UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES GRANT and<br>JEREMY REICHBERG,<br><br>                    Defendants. | No. 16 Cr. 468 (GHW) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JEREMY REICHBERG'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM SUBJECT DEVICE-19**

We submit this memorandum in support of Defendant Reichberg's motion to suppress all materials seized from Subject Device-19 because (1) the government's seizure of documents flagrantly exceeds the scope of the search warrant and (2) the government has once again seized from Reichberg massive amounts of private and/or privileged materials, including privileged marital communications, and given those to Reichberg's co-defendant.

On June 20, 2016, the government searched Reichberg's residence and seized thirty-five electronic devices.  The government copied some of these devices and gave all of the data from the copied devices to Reichberg and his co-defendants, without bothering to conduct the search required by the search warrant.  Reichberg moved to suppress the seized data.  Following the receipt of defendant Reichhberg's motion to suppress the government obtained a new search warrant and searched, among other devices, Subject Device-19, a cell phone.  Search Warrant, attached to Cassidy Declaration ("Cassidy Decl.") as Exhibit A.

Before the government began searching Subject Device-19, Reichberg warned the government that the device contained communications between Reichberg and his wife that were covered by the marital communication privilege and that the government was not authorized to

1

review those privileged communications.  The government refused to impose a taint team to screen out these privileged marital communications, but instead took the position that it was entitled to review these communications.  Gov't Letter dated April 4, 2018, attached to Cassidy Decl. as Exhibit B.  On April 6, the defendant asked the Court to order the prosecutors to cease reviewing the privileged communications.  Necheles Letter dated April 6, 2018, attached to Cassidy Decl. as Exhibit C.  On April 10, the government wrote a letter opposing defendant's motion and arguing that no taint team was needed.  Gov't Letter dated April 10, 2018, attached to Cassidy Decl. as Exhibit D.

On April 23, Your Honor ruled that a taint team was needed and that any potential marital communications "should be reviewed in the first instance by a taint team rather than by the prosecutors directly involved in the prosecution of the case." 4/23 Tr. 30, attached to Cassidy Decl. as Exhibit E.  The government then announced that notwithstanding the motion which had been pending before the Court, the prosecution team had not waited for a ruling but instead had gone ahead and reviewed the confidential marital communications.  *Cf. United States v. Patel*, No. 16-cr-798 (KBF), 2017 U.S. Dist. LEXIS 125072, at *20-21 (S.D.N.Y. Aug. 8, 2017) ("In addition, upon receiving notice that the accounts contained significant numbers of privilege materials, the Government established a 'wall' review wherein a U.S. Attorney not affiliated with the investigation or prosecution of the matter reviewed the emails using search terms and filtered out privileged items before returning the unprivileged portions of the email accounts to the prosecution team and the defense.").  The government stated that "there was not a close look at any potential marital communications during that review, but we don't intend to review those communications further." Tr. 30-31.  The Court questioned the government, specifically asking whether any confidential marital communications between Mr. Reichberg and

his wife from Subject Device-19 had been reviewed or identified as responsive and disclosed to the defendants.  The prosecutor represented that the government "took a very conservative approach" and therefore she did not believe "we actually identified as responsive to the warrant any communications that were between solely Mr. Reichberg and his wife."  Tr. 35.

The government's representation to the court was not accurate.  In fact, the government identified as responsive to the warrant more than two years' worth of confidential marital communications that were contained in approximately 4,500 PDF pages of messages between Mr. Reichberg and his wife.  Attached to these texts are approximately 3,000 photographs and videos.  Cassidy Decl. ¶ 11(a).

Moreover, the vast majority of these text messages, and other text messages seized from Subject Device-19 are not responsive in any way to the search warrant.  Cassidy Decl. ¶ 11.

We believe the government did the following.  Apparently, the government team ran searches using search terms on the data from Subject Device-19.  If a search term had a "hit" on a particular message within a given "chat" between Mr. Reichberg and any other person, then the government apparently included in the identified materials *all messages within that "chat" contained on Subject Device-19*, regardless of when the other messages occurred, the volume of the other messages, or the subject matter of the other messages between Mr. Reichberg and that other person.

The government's behavior is akin to searching a filing cabinet labeled "Susan" which contains 20,000 letters between Susan and Jeremy Reichberg and finding one letter that mentions Jimmy Grant and is therefore responsive to the search warrant, and thereafter seizing all 20,000 letters between Susan and Mr. Reichberg.  Obviously, the seizure of the 19,999 other letters, which had no mention of Jimmy Grant and pertained to topics not covered by the search warrant,

would be an unauthorized seizure which flagrantly exceeded the bounds of the warrant. *United States v. Dzialak*, 441 F.2d 212, 217 (2d Cir. 1971) (holding that where "the items seized … which were not described in the warrant far outnumber[r] those described," it is "an abhorrent general search" and should be suppressed).

That is what has occurred in this case. The material seized from the phone and produced as "identified materials" is largely made up of two categories: individual text messages and "chats." The individual text messages were provided in several extraction reports totaling approximately 2,500 pages. Many of the text messages included in these reports were produced multiple times, however, so we estimate that the non-duplicative text messages produced amount to less than 1,000 PDF pages. The second category of material, which constitutes the vast majority of the produced data, consists of "chats." This data was provided in .txt format, but when converted to PDF, is approximately 8,000 pages long. Cassidy Decl. ¶ 10. The term "chat," however, is something of a misnomer. In fact, many of the "chats" contain all the messages between two (or more) people over months-long periods. Some of these "chats" contain thousands of pages' worth of messages. For example, the "chat" among Reichberg, his wife, and his daughter—from March 8, 2016 through June 19, 2016 and which includes discussions of travel abroad, birthday wishes, holiday plans, family updates, etc.—is approximately 525 PDF pages long and contains more than 3,600 family photos videos. Cassidy Decl. ¶ 11(b). None of it, as far as we can tell, is responsive. Similarly, the chat between Reichberg and his wife—from December 22, 2013 through June 20, 2016—is approximately 4,500 PDF pages long and contains more than 3,000 photos and videos. Cassidy Decl. ¶ 11(a). As the Court has ruled, all of it is privileged. A third "chat," among Reichberg and a number of his friends from November 18, 2015 through June 20, 2016, is over 2,200 PDF pages long and

contains more than 11,500 photos and videos. Cassidy Decl. ¶ 11(c). In short, of the approximately 8,000 PDF pages of "chats" produced, approximately 7,000 pages are from these three chats. These "chats" are either non-responsive or privileged and the government, therefore, exceeded the scope of the warrant—and violated the Fourth Amendment—when seizing them and producing them to co-defendant Grant.

The government's conduct here in seizing and producing to both defendants this vast quantity of items which exceeds the scope of the search warrant is particularly disturbing because of the litigation which has already occurred in this case. The government already seized massive amounts of materials from Reichberg which it was not authorized to seize and gave those materials to third parties. The government argued that this prior behavior was an innocent mistake, which occurred because Reichberg did not object to their actions and represented to the Court that new rules had been put into place in their office which would prevent this type of violation of a defendant's rights in the future.

Now, just a few months later, in the face of specific warnings about privileged marital communications, the government has failed to take basic precautions and again produced to a co-defendant thousands of pages of texts which the government was not authorized to seize and which contain highly personal information about Mr. Reichberg's personal life, including over 4,500 privileged marital communications between Mr. Reichberg and his wife. And, the government did all of this while there was a motion pending, specifically objecting to its review of these marital communications.

We are baffled by the government's lack of concern for complying with its legal obligations. We do not understand why it would ignore a pending motion and, given the outstanding motion and all that has occurred in this case, why it would not even check to make

sure that it was not exceeding the scope of the warrant or unlawfully distributing marital communications.  We submit, however, given the government's clear and repeated violation of Mr. Reichberg's constitutional rights, suppression of the items seized by the government from Subject Device-19, and the return of this device to Mr. Reichberg, is a remedy that at this point is mandated by clear precedents.  *See United States v. George*, 975 F.2d 72, 80 (2d Cir. 1992) (quoting *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988) that "when officers grossly exceed scope of warrant the particularity requirement is undermined and suppression of all evidence is required" (emphasis in the original)); *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) (suppression of all evidence seized is the remedy where "those executing the warrant acted 'in flagrant disregard' of the warrant's terms.").  *See also Illinois v. Gates*, 462 U.S. 213, 259 n.14, 103 S. Ct. 2317, 2343 (1983) (White, J., concurring in the judgment) ("Also deserving of exclusionary treatment are searches and seizures perpetrated in intentional and flagrant disregard of Fourth Amendment principles."); *United States v. Foster*, 100 F.3d 846, 851 (10th Cir. 1996) ("Because the officers here flagrantly disregarded the terms of the warrant in seizing property, the particularity requirement is undermined and the otherwise valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant.") (internal quotation marks and brackets omitted); *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985) ("A flagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search requiring the suppression of all evidence seized during the search.").

      Additionally, we ask that co-defendant Grant be ordered to immediately return all privileged marital communications and delete them from any computers systems on which they exist.

**Conclusion**

The Court should suppress all evidence seized from Subject Device-19.

Dated: New York, New York
April 27, 2018

Respectfully submitted,
HAFETZ & NECHELES LLP

By: _____/s/_____
Susan R. Necheles
Kathleen E. Cassidy
10 East 40th Street, 48th Floor
New York, NY 10016

*Attorneys for Defendant*
*Jeremy Reichberg*