30 Rockefeller Plaza
New York, NY 10112

Hon. Gregory Woods
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/9/2022

**NBCUniversal**

February 9, 2022

Re: <u>United States v. Reichberg</u> 1:16-cr-00468-GHW-3

Dear Judge Woods:

WNBC respectfully writes to request that the Court take appropriate actions as outlined below that will enable WNBC to gain access to materials in the *U.S. v. Reichberg* matter that relate to past allegations of corruption and misconduct concerning Phil Banks, the newly-appointed Deputy Mayor for Public Safety for New York City, who was previously named as an unindicted co-conspirator in the above matter.

First, we respectfully request the Court to unseal - or to order the U.S. Attorney for the Southern District as custodians of the evidence to release - any and all materials that (i) pertain to Mr. Banks and (ii) constitute "judicial records" because they were reviewed by the Court or were otherwise relevant to the Court's performance of its judicial functions in this case. See *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). We have noted that the court docket reflects a number of instances in which documents were submitted and placed under seal (see Docket Nos. 37, 39, 40, 49, 55, 306, 311, 372, 604). We cannot discern the subject matter of those documents from the docket entries, whether appropriate findings were made in connection with such sealing, nor if those documents were reviewed by the Court. We request access to such sealed records to the extent they concern Mr. Banks and constitute "judicial records," even if they were discovery or motion-related materials reviewed by the Court at the pre-trial stage but not later entered into evidence at trial.

Second, we respectfully request the Court lift its broad protective orders (Docket Nos. 34, 132, 134), so we can speak to the parties about gaining access to discovery materials pertaining to Mr. Banks directly from them.

We believe the public interest in information about the past accusations and/or evidence of wrongdoing by Deputy Mayor for Public Safety Banks far outweighs any potential privacy considerations the Deputy Mayor may have. Indeed, Deputy Mayor Banks has already written an op-ed in the Daily News on January 7, 2022 (see attached) attempting to refute some of the allegations likely contained in the still non-public materials – non-public due to what we believe are overly restrictive and outdated protective order(s) preventing parties from sharing these materials.

To the extent there was a "good cause" finding at the time the original protective order was issued to help protect any ongoing investigation and the fair trial rights of the defendants, that concern is no longer operative. The trial in this case is long over and years later, it is our understanding that any related criminal investigation is now closed.  In fact, both the SDNY U.S. Attorney's Office and the Manhattan District Attorney issued rare public statements in 2017 stating the related-corruption inquiry into then Mayor de Blasio was closed. While Mayor de Blasio was not charged, there were statements by the US Attorney that were highly critical of this unindicted high public official.

Further, while Mr. Banks resigned as the NYPD Chief of Department as the Reichberg/Rechnitz corruption probe was getting underway and entered private life, he is now once again serving as a high- level public city official. Any privacy considerations Deputy Mayor Banks may formerly have had are far outweighed by the public interest in information reflecting on his ethics, honesty, conduct and character as they pertain to his new position.

In his January 7, 2022 op-ed in the Daily News, Mr. Banks wrote, "I never did anything in my official capacity for Rechnitz or Reichberg … nor did I ever betray the public trust by abusing my authority as an NYPD official …". It is past time to learn if the facts contained in the discovery and investigation materials support or refute his very public claims.  In *U.S. v Smith* (985 F. Supp 2nd 506 (2013)), the court wrote "…courts should evaluate the extent of the harm to the officials caused by the discovery on a case-by-case basis, taking into consideration the nature of the information in the discovery materials as well as the public officials at issue." The Court added specific findings should be reached as to "…how dissemination of the discovery might jeopardize them."

The Third Circuit in *United States v. Chang (Torricelli)*, 47 F.App'x 119, 2002 WL 3110890430 at *1 (3d Cir. 2002) made clear that the standard for evaluating, in the sealing order context, the privacy concerns of unindicted third parties who are public officials is "...unnecessary and intensified pain." Relying on its earlier decision in *United States v. Smith*, 787 F.2d 111(3d Cir. 1986), the Court held that privacy interests could only justify the sealing or redaction of a judicial record "to prevent 'unnecessary and intensified pain on third parties who the court reasonably finds are entitled to protection'..." 47 F.App'x at 123 (quoting *Smith*, 787 F.2d at 116). The Court further ruled that "as in *Smith*, although the 5K letter contains statements that are perhaps painful to Torricelli, it is not the 'unnecessary and intensified pain' required to overcome the presumption of openness." *Id*. The Court further noted that "...the record indicates that (then-Senator Torricelli) has already made public statements attempting to refute the very material he now wants to suppress from public view." We believe the same standard and considerations should apply to broad protective orders in this past public corruption matter.

Finally, we want to be clear we are not claiming an unfettered public right of access to discovery materials not already reviewed by the Court. We are only requesting a lifting of overly broad and outdated sealing and protective orders. The lifting of these orders will enable us to ask officers of the court to consider providing materials that have already been shared among numerous parties. We request the Court to lift its prior sealing and protective orders in full in the public interest. We believe at this late date, it should be left to the parties to decide whether they choose to share discovery materials with the press about the conduct of a high public official.

If you have any questions or require any additional information, please contact me any time at 212-664-4026. Thank you very much for your time and prompt consideration.

Sincerely,

Jonathan Dienst
Chief Investigative Reporter, WNBC

Cc: Nick Biase
US Attorney Spokesman

Fabien Levy
City Hall Spokesman re: Deputy Mayor Phil Banks

Susan Necheles
Attorney for Jeremy Reichberg

**Dienst, Jonathan (NBCUniversal)**

**Subject:** FW: My call to protect and serve NYC: Philip Banks, Eric Adams' newly appointed deputy mayor for public safety, defends himself

https://www.nydailynews.com/opinion/ny-oped-philip-banks-eric-adams-nypd-20220107-is4fxfskuzcr7pdt4cq5ytphvu-story.html

# My call to protect and serve NYC: Philip Banks, Eric Adams' newly appointed deputy mayor for public safety, defends himself

By PHILIP BANKS III

NEW YORK DAILY NEWS |

JAN 07, 2022 AT 5:00 AM

The law is in my blood. My brothers and I grew up with it, watching my father leave the house every day from our home in Cambria Heights, off to protect the people of the city. His name was Philip too. And I, like many other people, followed in my father's footsteps.

Now, nearly 40 years after I left home, and after nearly 30 years as a member of the NYPD, I still want to serve. But as I take on a new role as deputy mayor for public safety, I owe it to New Yorkers, and to our new Mayor Eric Adams, to answer some questions that have been raised about me.

Based on the release of court records, there has been much speculation about my relationship with two men, Jona Rechnitz and Jeremy Reichberg, who were later convicted as part of a corruption investigation. I was never charged with any crime as part of that investigation, which is why I never felt it necessary to address the reports.

1

The central theme of the reports about my involvement in the corruption scheme was that I was party to it; that I traded favors as a senior NYPD official for some form of compensation. That is 100% false. In fact, neither defendant even claimed this. I never did anything in my official capacity for Rechnitz or Reichberg.



In his own words. (James Keivom/New York Daily News)

The other story is that I left the NYPD to avoid a departmental trial on the investigation. That is also completely false. I was asked by the police commissioner to take the position of first deputy commissioner in the NYPD. Some considered this to be a promotion, others did not. I expressed my concern about accepting the position. I did not feel I could be effective in the role.
The commissioner stated that he would like me to stay on and we discussed the restructuring of my role, but we could not agree. Ultimately it was the commissioner's decision to define the role, and I

respected that and his decades of success in law enforcement. But it was my decision whether to accept. And after three decades in the NYPD, I made the decision to retire.

Sponsored Content by Project-Management.com

There are also individual details of the speculation that I would like to address. It was reported that I had unexplained income in my bank accounts. This again proved to be false. There was a question about unreported income from my rental properties. The IRS investigated these questions and took no action. For instance, the rental income was payments from a tenant who is a long-time family friend. And those payments were offset by the cost of repairs and other expenses incurred by the properties, which I never deducted. In hindsight though, I absolutely should have declared the income and taken the legally allowed deductions associated with those properties.

And there was a question of why I invested my money with Rechnitz. The answer to that is simple: At the time, I believed he was a legitimate businessman.

Despite the fact that I never broke the law, nor did I ever betray the public trust by abusing my authority as an NYPD official, I do also want to offer an apology to the people of New York. My interaction with Rechnitz and Reichberg was a mistake. These two men were attempting to corrupt public officials — and I now regret the time I spent with them. I realize now that even the appearance of our friendship was damaging to my profession. I hope that from here on, I can serve the people of New York excellently to prove my commitment to them.

It is an odd thing to watch and listen to your name get dragged through the mud. And I would probably just stay out of public life if it was not just my name being dragged through the mud. But it is not just my name. It is my father's name.

I love the law and I love this city. I want to serve. I know I can help keep this city safe. So I will serve. From here on, I promise all New Yorkers that I will let my hard work be the evidence of my commitment. But more importantly, it will be how I live up to my dad's name and fulfill my promise to the people of New York City.

*Banks is the incoming deputy mayor for public safety of New York City.*